May it please the court. I'd like to emphasize two main points today. First, the board erred by finding that the addition of a lock to an auto retracting safety knife would not disable the auto retraction safety feature. It would disable the auto retraction safety feature and the board and director both substantively admit that. Second, the board made a new and erroneous replacement rejection by instead finding and admitting that the prior accommodation would indeed defeat the appeal all recite a utility knife that includes a lock that locks the blade holder in its extended position. The primary reference in every one of these rejections is an auto retracting safety knife in Jennings. Everybody agrees that that safety knife lacks the claimed lock and there's a good reason for it. The knife includes a safety feature by which the blade automatically and immediately retracts into a protected position anytime a user lets go of the knife. It's a fail whenever the person is either not holding the knife or puts it down. For example, if the user drops the knife or it slips during use. But wait, I'm confused. Didn't the board actually find that Ackert showed a single knife that had both an auto retract and a locking mechanism? And that was actually error because Ackert does not have an auto retracting safety feature. In Ackert, the board and the director both substantively admitted that in order to cause retraction, a user has to manually depress a button. If you have to manually depress a button in order to retract, it's not automatic retraction and it provides no safety at all. So you're saying that Ackert doesn't have a spring that would allow for an auto retract? Ackert does not have a spring that provides auto retraction. Ackert has a spring that provides retraction assistance. So in Ackert, if you look at both the board's decision and the director's briefs, in order to retract the blade, the user must push down an actuator button and dislodge that actuator button from the fully extended position just enough that it won't pop back out and lock again in the open position. So there is no auto retraction. In order to retract, anytime a user wants to retract the blade in Ackert, you have to push down the button and pull it back just enough to separate a peg from a notch so that then when you release, they no longer align and a spring will assist in the rest of the retraction. But that is not auto retraction because it provides no safety at all. If a user is using the Ackert knife, as the director and board admit, the blade will be locked in its open position. So if a user drops the knife or if it slips out of the user's hand, that blade is going to remain in the extended position. It's not auto retraction. It's auto locking in that extended position. And this was the fundamental error in the board's decision where the board premised obviousness on a finding that even after the lock was added to Jennings knife, you would still have that auto retraction safety feature. You would not. And there is no evidence of that. But the examiner actually talked about making a modification to Jennings safety knife with the Ackert locking feature, right? Right. But they didn't change the operation of Ackert's locking feature in the combination. In fact, the board states that Ackert's lock would operate in the same way in the proposed combination as it would have on its own. So you're saying that you don't need to do anything to initiate an auto retraction? Yes. If you look at Jennings and you look at the other prior to talk about a safety knife, the whole point of providing the safety feature is that as soon as you let go of the button, it will retract. It's a fail safe. In Ackert, it's a fail open. If you let go of Ackert's knife while the blade is in its open position, it'll stay open in a potentially dangerous position. That's why Ackert's knife is not an auto retracting safety knife. So returning to the board's rejections, appellants argued below exactly what I've just said, that it wouldn't be obvious to add the claimed lock to Jennings auto retracting safety knife because it would defeat that safety feature. The board responded with two arguments. One, like we just talked about, the board argued that you would still have that safety feature, but you wouldn't. Like I said, the board and the director both admit that in order to retract Ackert's blade, the user has to manually push a button. That is not auto retraction. I agree with your honor that there's a spring in Ackert. It's spring assisted retraction, but it is not automatic retraction. So the premise of the board's finding that it would be obvious to add this lock is erroneous. So now I'd like to turn to the board's that trying to defend the examiner's position that the combination would still provide auto retracting safety is false. So the board instead... I guess I'm still doing it. Let me go back. So you're saying in one, if you release a button, it auto retracts and the other, if you press a button, it auto retracts. No, under Jennings, anytime you let go of... So you constantly have to use your thumb to keep the blade extended in Jennings. That's the safety feature. So in order to extend the blade, you push on the actuator button and push it forward to pop the blade out. Anytime you let go of that button, it's going to retract. Whereas in Ackert, if you push the button down and push it into the extended position and let go of the button, it will stay extended. It will lock extended because when you've pushed that blade holder into its extended position, that button actually lines up with a notch that locks it there. So in Ackert, anytime you push the blade into the extended position and let go of the button, it will lock extended. That is not an auto retraction. That's auto locking in the extended position. In Ackert, the only way to ever retract Ackert's blade from the extended position back to a protracted position is by pushing that button down and pulling it back a little, enough that you can misalign the process before Ackert's spring can provide the rest of the retraction. That is not auto retraction. That's manual retraction with a spring assist. Did that clear up your concern? Thank you. So now I'd like to talk about the board's new replacement rejection, in which the board concedes alternatively that the addition of this lock would result in a knife that lacks auto retraction. The board's replacement rejection should be vacated because it's new, because the board is forbidden from relying on new facts and rationales that were not previously presented by the examiner. But the board's position is that it's not new, that they're simply just explaining an additional basis to support the original conclusion. Isn't that different than an entirely new ground of rejection? Well, in truth, the board's new rejection is the opposite of what the examiner did. The examiner maintained consistently that the combination would still provide auto retraction. The board's new rejection says that the combination results in a knife that lacks auto retraction. And that lacking of auto retraction, it's the opposite of the examiner's finding. It contradicts the examiner's finding, and it uses new findings of fact to do so. The examiner never relied on a second embodiment in Jennings, which provided a fold-to-retract knife, because it wasn't important to the examiner. It wasn't important to the issues when the record was opened before the examiner. The board newly cited that second embodiment for the first time to try to create a new definition of safety knife, whereby a safety knife could somehow be a safety knife even without auto retraction. Your definition of safety knife didn't make sense in light of this second embodiment in Jennings itself, right? What's important here, it's not my definition of safety knife. It's the definition of safety knife that the board was trying to rely on in order to justify that even if the examiner was wrong, and the examiner's assertion that there would be auto retraction, that the resulting knife would still be a safety knife. That fight over safety knife is entirely new. The examiner never disputed that a safety knife required auto retraction. It was only the board that in the first instance said that this new and different combination would be obvious because the resulting knife would still be a safety knife. That decision is new because the board never made that finding. That decision is new because the board relied on a new rationale in that second embodiment in Jennings that the examiner had never touched. That decision was new because the board relied on a new and different definition of safety knife that didn't require auto retraction. Okay, but I'm looking at claim one. Yes. And I'm looking for where it specifically states that this is the mode of operation. So, okay, so the mode of operation for the claim is that there has to be a lock. It doesn't include the limitation that you're telling us is the distinction, or if it does, it will be helpful if you could point it out. Right. The distinction between the prior art and the asserted combination is that the claim requires a lock and that the common, it would not be obvious to make the prior art combination. That lock is really the opposite of auto retracting. Lock's in the prior art, so what we need is we're in the claim. It shows, again, the mode of operation that you just told us is the distinction. So, the distinction relative to Jennings is the addition of the lock. The lock exists in the prior art in Accurate, but not in Jennings. And Jennings avoids using a lock for a very specific purpose. And that we know is in the prior art. Right. Both of these individual features are in the prior art, but our appellant's position is that it would not be obvious to combine these features because Jennings specifically says that you're supposed to provide this particular safety feature of auto retraction. Auto retraction isn't in the claim. Where does Jennings say, you know, when I say safety knife? I mean auto retraction. So, there's several places. First, if you look at Jennings. In the way that you mean it with respect to embodiment one of Jennings. Well, Jennings title is safety cutter or safety knife. Right, and then there's two embodiments. Right, there's two embodiments. And then the second embodiment, you can, the blade is in an open position and there's no need to hold the finger down on anything to keep the blade in an open position. Right. Now, this issue was never, this was never an issue before the examiner. Only in front of the board did the board say that you'd still be a safety knife without auto retraction. This was in response to your argument that safety in Jennings means something very, very specific. And we provided lots of evidence below that Jennings explains that auto retraction feature is what provides safety. That Bierman and Greiner both also define safety knife as providing auto retraction. This was never an issue before the examiner. The examiner agreed with us, so there was no reason to provide additional evidence. When the board used Jennings' second embodiment. Well, just looking at the two embodiments of Jennings, what do you think is the fairest understanding of what Jennings must have meant when he used the term safety? The fairest understanding from a person of ordinary skill in the art looking at this record is the main embodiment in Jennings was the safety knife, the auto retracting embodiment. I think an attorney just added that second embodiment. And if you look at the detailed description of the second embodiment. So the second embodiment is something we should sweep under the rug maybe? It's not a safety knife. Nowhere in the detailed description does any... So Jennings illustrated two embodiments. Yes. One that it intended to be a safety knife and one that it did not intend to be a safety knife? It never says that the second embodiment is a safety knife other than in an errant description in the drawings. The detailed description never identifies any feature of that second embodiment. An errant description in the drawings to have labeled embodiment number two in Jennings as a safety knife? Yes. It is because Jennings identifies nothing about that second embodiment that would provide safety. Basically, the board is saying that any knife that folds is a safety knife. But that just doesn't make sense. A switchblade would be a safety knife under that definition because a switchblade can fold closed, but nobody would consider a switchblade to be a not just in response to an appellant's argument, but in order to justify its new finding that you could eliminate the auto-retraction safety feature yet still be obvious because you still, according to the board, have a safety knife. This isn't just a rebuttal of an appellant's argument. The board is making new findings to justify a new and different rejection. Why wouldn't it still be safe? Because you have the ability to retract the blade into the housing. The blade isn't just permanently sticking out all the time. But you have an opportunity, if you like, to bring it back into the housing so that it won't unintentionally stick somebody. There are lots of ways that a blade can be protected. But if you look at the art and everything that was available to the examiner, Bierman, Greiner, and Jennings, they all explained that safety knives provided auto-retracting. So there was a fail-safe retraction. That second embodiment in Jennings does not provide fail-safe retraction. Once it's open, it's open. If you drop it, it'll go through your foot. It does not auto-retract. It doesn't provide the safety feature that was the focus of what those of ordinary skill in the art understood to be a safety knife. And I'll try to reserve what little time I have left. Thank you. Let's hear from the office. I can't please the court. I just wanted to address two points that were made. I think the first thing is this auto-retraction discussion is a little bit distracting because auto-retraction is not required by Jennings. As you pointed out, Judge Chen, Jennings never says that the auto-retraction feature is the central feature to it. And if we look at the appellant had admitted that the feature that Jennings considers the safety feature is that it folds. So that's referenced on APPX 25 in the abstract. They said that it's adapted to be safely folded. And then again, if we look at 533, it says safety cutters that include in the brief description of the drawings, when they talk about the embodiment two, figures eight through 17, 12 to 21, all call it a pocket safety cutter. So I don't think that that's fair to say that's an errant or clerical mistake in Jennings. The fact that the safety feature that Jennings envisions is the fact that it can be folded. So the auto-retraction feature is not required to be retained. And when we talk about the claims, the claims are simply to a foldable knife having a manually operable lock. The fact is that Jennings has this, the foldable knife aspect of it, accurate, no dispute that it has the manually operable lock. I also wanted to take issue with the fact that this safety question was not before the examiner. If we look at some of the statements made by the examiner. So if we look at, for example, APPX 351, they talk about how the non-locking and the from one to the other is not destroying the reference, but merely catering to consumer preference. So the examiner was certainly making the same rejection as the board, the combination of a foldable lock and a manual lock. And again, in their appeal brief, let me find the, so they had also argued, again, yeah, and the examiner, sorry, again, in 441 talks about the principal operation of Jennings is to cut boxes and that they say that the modification may provide the user with a lock while still maintaining the ability to be a safety knife. So this issue of was before both the board and the examiner. Okay, sorry. If we turn to the site that I was looking for is on 370, where in their appeal brief to the board, appealing the examiner's rejection, they talked about, it would not have been obvious to further modify the knife because the modification would defeat the central auto retracting safety feature. So this was not a new issue that was not before the examiner. This was before both the examiner and the board and the board simply pointing out the fallacy of, they were saying, hey, Jennings requires this auto retraction feature. And the board was saying, well, no, that's not the main feature of Jennings as the safety feature was not a new rejection. It was simply pointing out the fallacy of the argument that they were trying to make. If there are no further... So is it correct that some claims were allowed? No, it's not correct. No claims were allowed. Okay. So that the claims that aren't mentioned like claim four had been canceled? Correct. Yep. Okay. Are there any further questions? I'll yield the rest of my time. Any questions? Okay. Thank you. Henry Buttle, I'd like to make one main point. The director argues that auto retraction is not required by Jennings. That misses the point. Auto retraction is required by the examiner's rejections and the board's findings. The board based obviousness on its findings that the modified knife would still provide auto retraction. It would not. That finding is error and demand reversal. Second, the director argues that the same issue was before the examiner. It couldn't have been. The examiner argued at all points that the combination would still provide auto retraction. The board's new rejection saying that the proposed combination would lack auto retraction is contradictory to what the examiner found. So it is new and was not before the board. So which of your claims then include this specific limitation that you keep arguing to us? Obviously not claim one. It is claim one. Claim one requires a lock. I'm not... Other claim one is a lock. Yes. Claim one requires... There's nothing automatic about it. It just requires a lock. Right. But we argued that it wouldn't have been obvious to add that lock to Jennings because Jennings says that it's important to provide auto retraction. In response, the board found that the combination of Jennings and Akrader-Griner would still provide that lock and would be obvious because it would still have that safety feature, that auto retracting safety feature. So let me try to phrase that a little better. The board found that the proposed combination was obvious because it would still provide that auto retraction safety feature. It's the board's finding that demanded the auto retraction still be there because it was the basis of the board's assertion that the combination would be obvious. That finding is false. So the auto retraction is not in a claim. Auto retraction is a finding by the board that justified the obviousness of the combination of prior art. And because that board's finding that the proposed combination would still have auto retraction is false, the board's consequential finding that it would be obvious to make that combination must also be reversed. Anything else? Thank you. Thank you both. The case is taken into submission.